[No. A102843. First Dist., Div. Five. June 4, 2004.]

RENEE MILLIGAN, Plaintiff and Appellant, v.
GOLDEN GATE BRIDGE HIGHWAY AND TRANSPORTATION
DISTRICT et al., Defendants and Respondents.

4

COUNSEL

The Scott Law Firm, John Houston Scott, Jessica M. Ronco, Lounibos, Lounibos & Tinney, Leroy J. Lounibos, Jr., for Plaintiff and Appellant.

Hanson, Bridgett, Marcus, Vlahos & Rudy, Kimon Manolius and Jennifer A. Fabish for Defendants and Respondents.

OPINION

**JONES, P. J.**—Appellant Renee Milligan contends the Golden Gate Bridge Highway and Transportation District (the Bridge District) must be held responsible for the death of her teenage daughter who committed suicide by jumping off the Golden Gate Bridge. We conclude there is no liability under the facts alleged and will affirm the trial court's decision in favor of the Bridge District.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2001, 14-year-old Marissa Imrie paid $150 for a cab to take her from her home in Santa Rosa to the Golden Gate Bridge. When Marissa arrived, she walked out on to the bridge, climbed over the three-and-one-half-foot railing, and jumped to her death. Marissa's body was recovered from the bay later that same day. Her "diary revealed an extremely depressed and distraught young girl."

Appellant Renee Milligan is Marissa's mother. In January 2003, she filed a wrongful death complaint against the Bridge District, its board of directors, and each director in his or her individual capacity.[1] As is relevant here, appellant alleged the lack of a suicide barrier on the bridge constituted a dangerous condition of public property. According to appellant, more than 1,200 people had jumped from the bridge since it opened in 1937. Over the years, the Bridge District had rejected numerous plans to erect a suicide barrier, including one plan in the 1970's that could have been built for approximately $3 million.

---

[1] Unless the context requires otherwise, we will refer to the defendants collectively as the Bridge District.

The Bridge District filed a demurrer arguing appellant had not and could not state a cause of action because the bridge was safe when used with due care. The trial court agreed and sustained the demurrer without leave to amend.

## II.  *DISCUSSION*[2]

### A.  *Standard of Review*

■   "A demurrer tests the legal sufficiency of the complaint . . . ." (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].) On appeal from a dismissal following an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint, as well as those that may be implied or inferred from the express allegations. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) "We do not, however, assume the truth of contentions, deductions, or conclusions of fact or law." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) When analyzing a demurrer, we look "*only* to the face of the pleadings and to matters judicially noticeable and not to the evidence or other extrinsic matter." (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 239, fn. 2 [244 Cal.Rptr. 764].) We are "not bound by the trial court's construction of the complaint . . . ." (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958 [93 Cal.Rptr.2d 413].) Rather, we independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. (*Blank v. Kirwan* (1985)

---

[2] The Bridge District filed three motions while this case was being briefed. We deferred ruling on the motions until we could reach the merits of the appeal. Having now considered the motions, we rule as follows:

The Bridge District's motions to strike portions of appellant's opening and reply briefs that reiterate facts contained in a recent New Yorker magazine article are denied.

(1)   As a general rule, on appeal we only consider evidence that was presented to the trial court in the first instance. (Cf. *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) However, this is an appeal from the trial court's decision to sustain a demurrer without leave to amend. On such an appeal, the plaintiff bears the burden of showing the trial court abused its discretion because there is a reasonable possibility the plaintiff could amend the complaint to state a cause of action. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711 [113 Cal.Rptr.2d 399].) Such a showing may be made based on evidence that is presented for the first time in the appellate court. (*Ibid.*) Here, we will consider the facts appellant cites when deciding whether there is a reasonable possibility appellant could amend her complaint. We note, however, that we have not been asked to and we are not taking judicial notice of the truth of those facts.

The Bridge District has also asked us to take judicial notice of an unpublished memorandum order issued by the United States District Court in a case appellant filed. The Bridge District has failed to demonstrate how that decision would be relevant to our analysis. Therefore judicial notice is denied. (*Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].)

39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We must determine de novo whether the factual allegations of the complaint are adequate to state a cause of action under any legal theory. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].) If a complaint does not state a cause of action, but there is a reasonable possibility that the defect can be cured by amendment, leave to amend must be granted. (*Id.* at p. 39.)

### B. *Sufficiency of the Complaint*

Appellant contends the trial court erred when it sustained the Bridge District's demurrer because her complaint stated a cause of action for damages based on a dangerous condition of public property.

Government Code[3] section 835 sets forth the circumstances under which a governmental entity may be held liable for maintaining a dangerous condition of public property. Section 835 states, "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

The term "dangerous condition" is defined by section 830, subdivision (a), to mean "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property . . . is used with due care in a manner in which it is reasonably foreseeable that it will be used."

■ Cases interpreting these statutes have stated that a public entity is only required to maintain its property in a way that is safe for "careful use." (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1196 [45 Cal.Rptr.2d 657].) "Although public entities may be held liable for injuries occurring to reasonably foreseeable users of . . . property . . . liability may ensue only if the property creates a substantial risk of injury when it is used with due care." (*Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1466 [72 Cal.Rptr.2d 464] (*Schonfeldt*).) After all, "any property can be

---

[3] All further section references will be to the Government Code.

dangerous if used in a sufficiently abnormal manner." (4 Cal. Law Revision Com. Rep. (Jan. 1963) p. 822.) However, it is "well settled . . . that the negligence or lack of due care exhibited by a plaintiff-user of public property does not necessarily defeat [her] cause of action." (*Fredette v. City of Long Beach* (1986) 187 Cal.App.3d 122, 130 [231 Cal.Rptr. 598].) ■ Section 830, subdivision (a), states property is in a "dangerous condition" when it creates a substantial risk of injury when "used with due care in a manner in which it is reasonably foreseeable that it will be used." This phrase does not require that the plaintiff show he or she was using the property with due care. To allege a section 830 "dangerous condition" plaintiff is only required to show that the condition "creates a substantial risk of harm when used with due care by the public generally . . . ." (*Murrell v. State of California ex rel. Dept. Pub. Wks.* (1975) 47 Cal.App.3d 264, 267 [120 Cal.Rptr. 812].) "So long as a plaintiff-user can establish that a condition of the property creates a substantial risk to *any* foreseeable user of the public property who uses it with due care, [she] has successfully alleged the existence of a dangerous condition regardless of [her] personal lack of due care." (*Fredette v. City of Long Beach, supra,* 187 Cal.App.3d at p. 131.)

■ Whether liability may be imposed under section 835 for injury caused by a dangerous condition of public property is ordinarily a question of fact to be decided by the trier of fact. (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148 [132 Cal.Rptr.2d 341, 65 P.3d 807].) However, the issue may be decided as a matter of law where reasonable minds can only come to one conclusion. (*Ibid.* )

■ Applying these principles, we conclude the trial court ruled correctly. The theory of appellant's challenged complaint was that the bridge constituted a dangerous condition of public property because it lacked a suicide barrier in addition to the existing three-and-one-half-foot safety railing. Appellant pled specifically that her "daughter committed suicide by jumping off of the Golden Gate Bridge." As the phrase implies, a suicide barrier would be used to protect those who intend to commit suicide by jumping off the bridge. We conclude reasonable minds will reach but one conclusion as to whether the lack of a suicide barrier is a dangerous condition. By definition, persons who use the bridge to commit suicide *are not* using the bridge in a manner used by the general public exercising ordinary care. As a matter of law, the Bridge District cannot be held liable for its failure to install a suicide barrier to protect those who intentionally use the bridge without due care.

The conclusion we reach is fully consistent with case law. For example in *Schonfeldt, supra,* 61 Cal.App.4th 1462, the trial court granted judgment on the pleadings against a 15-year-old minor who climbed a freeway fence, ran across a freeway, and was struck by a passing truck. The appellate court

affirmed that decision ruling there could be no liability because the minor "chose to do something no reasonable person using due care would do . . . jump a fence and run across a freeway." (*Id.* at p. 1468.)

We reach a similar conclusion here. Persons who climb over the existing three-and-one-half-foot railing and jump to their death are doing something "no reasonable person using due care would do . . . ." (*Schonfeldt, supra,* 61 Cal.App.4th at p. 1468.) There can be no liability under those circumstances.

### C. *Proposed Amendments*

In appellant's memorandum in opposition to the Bridge District's demurrer, she asserted the bridge, as it presently exists, is a dangerous condition of public property because the three-and-one-half-foot safety railing is itself "insufficient to prevent a wide variety of people from accidentally falling to their deaths, including but not limited to: (1) children engaged in horseplay, (2) people leaning over the railing for such purposes as getting a better view of a sailboat or simply looking over the edge, (3) people sitting or leaning on the railing for photographs, (4) people standing or sitting on the railing for entertainment or thrills, (5) people under the influence of alcohol or drugs, (6) people trying [to] stop suicides, and (7) people suffering from an uncontrollable urge to jump from heights." While standing by her complaint, appellant asked for leave to amend to plead this danger to the general public, "if necessary."

The trial court apparently deemed these allegations insufficient to cure the deficiencies it had identified and sustained the Bridge District's demurrer without leave to amend. Appellant now contends the trial court erred because the amendments she proposed were sufficient to state a cause of action for a dangerous condition of public property. She argued below and argues here that Marissa's intentional suicide "goes only to an affirmative defense of comparative fault." We disagree.

We will assume, for purposes of this argument, that the amendments proposed were sufficient to plead the existence of a dangerous condition because appellant alleged the bridge was dangerous when used by the general public with due care. (*Fredette v. City of Long Beach, supra,* 187 Cal.App.3d at p. 131.) However, even with this assumption, appellant's cause of action fails for another reason.

An essential element of a cause of action for damages based on a dangerous condition of public property is causation. (§§ 835, 840.2.) A plaintiff must show that the dangerous condition in question was a substantial

factor in causing his or her harm. (See CACI No. 1100; BAJI No. 3.76.) " 'If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries. [Citation.]' " (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052 [1 Cal.Rptr.2d 913, 819 P.2d 872]; see also *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 439 [20 Cal.Rptr.2d 97].) The issue of causation, like the existence of a dangerous condition, usually presents a question of fact. (*Capolungo v. Bondi* (1986) 179 Cal.App.3d 346, 354 [224 Cal.Rptr. 326].) However, the issue can be decided as a matter of law where the facts of a case can permit only one reasonable conclusion. (*Ibid.*)

■ Here, appellant does not allege that her daughter accidentally fell from the bridge while engaged in horseplay, while leaning over the railing to gain a better view, or while posing for a photograph. Appellant admits that Marissa intentionally climbed over the existing three-and-one-half-foot safety railing and jumped. Whatever defects may or may not be present in the railing's current design, they were not, as a matter of law, the cause of Marissa's tragic death.

III. *DISPOSITION*

The judgment is affirmed.

Stevens, J., and Simons, J., concurred.