Filed 4/9/21  Zuelke v. City of Modesto CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ROBERT ZUELKE, | F079299 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 2025944) |
| CITY OF MODESTO et al., | **OPINION** |
| Defendants and Respondents. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  John D. Freeland, Judge.

Robert Zuelke, in pro. per., for Plaintiff and Appellant.

Arata, Swingle, Van Egmond & Heitlinger and Bradley J. Swingle for Defendant and Respondent City of Modesto.

Mayall Hurley and Mark E. Berry for Defendant and Respondent The House Modesto.

-ooOoo-

Plaintiff Robert Zuelke tripped and fell while walking on a public sidewalk alongside a large pile of branches from a fallen tree. He saw the pile of branches as he approached the area, but claimed he was momentarily blinded by the setting sun and got his foot caught in a protruding branch. His personal injury lawsuit went to trial against two defendants—the City of Modesto (the City), whose employee had worked at the site earlier that day to cut and remove branches blocking the public sidewalk, and The House Modesto (the House), the owner of the property whose tree had fallen. The jury found in favor of both defendants; plaintiff recovered nothing, and a defense judgment was entered by the trial court. Plaintiff appeals, arguing (i) the trial court erred in failing to give a negligence per se jury instruction, (ii) the jury's verdict was fatally defective or inconsistent, and (iii) the special verdict form had flaws. We disagree with these contentions and conclude that plaintiff has failed to demonstrate any reversible error. Accordingly, the judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

Plaintiff's Complaint

Plaintiff's complaint for personal injury damages was filed on July 25, 2017. Plaintiff alleged the House was liable based on general negligence and premises liability, and plaintiff alleged the City was liable based on general negligence and alleged creation of a dangerous condition on public property. Plaintiff's trip and fall occurred on Friday, July 29, 2016, between 7:00 p.m. and 8:00 p.m. in the evening, at the sidewalk in front of property owned by the House on Norwegian Avenue in Modesto. After certain pretrial and posttrial motions were made by each defendant, two causes of action remained: general negligence against the House, and creation of a dangerous condition on public property against the City.

The Trial

A jury trial of plaintiff's case commenced on January 16, 2019, which was conducted on nine separate days spread over a period of several weeks. Although

2.

plaintiff's appeal does not challenge the sufficiency of the evidence to support the verdict, we briefly highlight below some of the salient testimony, as background.

City employee David Ventura testified. He received a call on July 29, 2016, about a downed tree or limb and drove to the location on Norwegian Avenue. He saw the fallen tree and observed one limb was extending over the sidewalk and further over a grass area and out into the parking lane. He observed it appeared to be a privately owned tree; but in such cases the City will make the areas within its sphere of responsibility safe, such as the sidewalk. He cut up and removed the branches that were on the sidewalk and stacked the branches in the street near the curb (i.e., just outside the gutter pan) for subsequent pick-up. When he left that evening, the sidewalk was clear of all branches and debris. Placement of the branches in the street outside the gutter pan for pick-up was according to City policy. He had arrived at the scene at approximately 4:30 p.m. and left between 5:30 and 6:00 p.m. Plaintiff, who was representing himself, showed a photograph to Ventura that indicated the pile of branches, or some part of it, encroached onto the sidewalk—at least at the time plaintiff's photograph was taken. Ventura responded he did not leave the branches the way they appeared in plaintiff's photograph. Ventura was certain that he would not, and did not, leave any branches on the sidewalk. Ventura noted that, on some occasions, people in neighborhoods have been known to rummage through woodpiles and move things around.

Ventura worked alone and no one from the House assisted Ventura in cutting or moving tree limbs into the street to clear the public sidewalk. The House's senior associate pastor, Mike Trenton, testified the House was not involved in cutting up or moving tree limbs on the date of plaintiff's accident. If there was any minor work done to remove branches by any employee of the House, it was not on July 29th. The House did hire a tree service to remove the fallen tree, but that was later. According to Linda Cosgrove, the director of facilities, maintenance and grounds for the House, she received a call on a Friday afternoon between 3:00 and 4:00 p.m. from an aide at the House that a

3.

tree had fallen.  Cosgrove believed it was a City tree and that it had fallen in the roadway and needed to be cleared, so she called the City of Modesto tree department.  It turned out the House owned the tree, but she did not know that at the time.  She did not personally visit the property that day; she had called the City, and understood the City was taking care of it.  She did not herself remove any branches.  She heard that another employee of the House, Joe Spangler, may have removed a branch at one point, but she did not know what day that took place.  Spangler testified that he did not do any clean up or branch removal on July 29, 2016.  He has done some tree branch clearance work on other occasions, but on July 29th he was not even aware that the downed limb and pile of branches were there.

Plaintiff testified about his recollection of what happened when he fell.  He was walking on the sidewalk toward the west, and the sun was blinding.  He saw something ahead of him that at first looked like a "blob," but as he approached, he could see that it was a pile of branches that was occupying a part of the sidewalk.  The left side of the sidewalk appeared to be clear, so he walked in that direction to avoid the branches, but in doing so he stepped on a twig that caused him to lose his footing, and then his ankle was caught on an extended branch and he fell hard onto the sidewalk.

Proposed Jury Instruction Refused

Proposed jury instructions were discussed outside the presence of the jury.  One of the instructions requested by plaintiff was on the theory of negligence per se, as set forth at CACI No. 418.[1]  The trial court denied the request and did not give the negligence per se instruction to the jury.

The Jury's Verdict

On February 4, 2019, the jury reached its verdict in the case using special verdict forms that were approved by all parties.  The verdict and findings of the jury were as

---

[1]     CACI is the Judicial Council of California Civil Jury Instructions.

follows: On Special Verdict No. 1, regarding the claim against the City, the jury found there was a dangerous condition of public property at the time of the incident, but also found the dangerous condition was not a result of the negligence of City employee, David Ventura, and that the dangerous condition was not a substantial factor in causing plaintiff's injury. On Special Verdict No. 2, regarding the claim against the House, the jury found that the House was not negligent. Special Verdict No. 3 stated that plaintiff was entitled to recover "zero" damages, and it also found that the City and the House each were responsible for "zero" percent of the harm suffered by plaintiff, and that plaintiff's own negligence was responsible for "100 percent" of the harm.

Judgment on Verdict

On February 6, 2019, the trial court entered its judgment for defendants based on the jury verdict. After plaintiff's posttrial motion for new trial was denied, plaintiff filed the instant appeal from the judgment. The City and the House each filed separate respondent's briefs herein.

## DISCUSSION

### I.  Standard of Review

The question of whether the trial court erred in its instruction of the jury is reviewed de novo. (*Cumbre, Inc. v. State Comp. Ins. Fund* (2010) 189 Cal.App.4th 1381, 1388.) A party is entitled to have the jury instructed as to its theory of the case provided (1) that it requests and submits legally correct instructions, and (2) that there is sufficient evidence to support the theory. (*Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 547.) An erroneous refusal to instruct the jury is reversible only if it is probable that the error prejudicially affected the verdict. (*Taulbee v. EJ Distribution Corp.* (2019) 35 Cal.App.5th 590, 596; *Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1423.) We also review the validity of a special verdict de novo. (*Cumbre, Inc. v. State Comp. Ins. Fund*, *supra*, 189 Cal.App.4th at p. 1388.)

5.

Where the construction of a statute or ordinance is at issue, we independently review the question of statutory interpretation as a question of law, following well-settled rules.  (*Kurz v. Syrus Systems, LLC* (2013) 221 Cal.App.4th 748, 761.)  The fundamental objective of statutory interpretation is to ascertain and effectuate legislative intent.  (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)  In determining intent, we look first to the language of the statute, giving effect to its plain meaning.  (*Ibid.*)  We give the words their usual and ordinary meaning, while construing them in light of the statute as a whole and the statute's purpose.  (*Pineda v. Williams-Sonoma Stores, Inc*. (2011) 51 Cal.4th 524, 529–530.)  If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs.  (*Id*. at p. 530; *Microsoft Corp. v. Franchise Tax Bd*. (2006) 39 Cal.4th 750, 758.)

## II.  Trial Court Properly Refused to Give Negligence Per Se Instruction

Plaintiff contends he was entitled to a negligence per se instruction—also referred to as CACI No. 418—based on defendants' purported violation of a provision of the Modesto Municipal Code that requires branches, leaves or other green waste material to be placed for collection in the parking lane of the street outside of the curb or gutter.   As explained below, the trial court properly refused to give the subject instruction.

Where the doctrine of negligence per se is applicable, the standard of conduct established by a relevant statute or ordinance is adopted as the duty of care for purposes of a negligence cause of action.  (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1210.)  In such cases, where the statute or ordinance is violated it creates a rebuttable presumption of negligence.  (*Ibid*.)

The negligence per se doctrine is codified in Evidence Code section 669, subdivision (a), under which a presumption of negligence arises if the plaintiff establishes four elements:  (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute, ordinance, or regulation was designed to prevent; and (4) the

plaintiff was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. (*Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1285; *Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc*. (2010) 190 Cal.App.4th 1502, 1526; accord, *Taulbee v. EJ Distribution Corp*., *supra*, 35 Cal.App.5th at p. 596.) The last two elements are determined by the court as a matter of law. (*Quiroz v. Seventh Ave. Center*, *supra*, 140 Cal.App.4th at p. 1285; *Galvez v. Frields*, *supra*, 88 Cal.App.4th 1410, 1420.) "That is, the trial court decides whether a statute or regulation defines the standard of care in a particular case." (*Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc*., *supra*, 190 Cal.App.4th at p. 1526.)

Here, the crux of the dispute was whether the City of Modesto Municipal Code provisions in question (i.e., sections 4-7.1101 through 4-7.1103 thereof) satisfied the last two elements for application of negligence per se. Plaintiff argues negligence per se was applicable because the defendants allegedly failed to comply with the above Municipal Code provisions relating to the placement of green waste (e.g., branches, tree limbs, leaves) in the street for the City's collection. These Municipal Code provisions explicitly address "systemizing the collection of large green waste, small green waste and leaves in the City." (§ 4-7.1101.) Section 4-7.1103 thereof governs the "placement" of the green waste in the street for the purpose of collection. The section provides that branches and other large green waste shall be placed in the street at least one and one-half feet away from the foot of the curb, or if curbs do not exist, one and one-half feet from the point of the gutters, "so as to permit drainage." (§ 4-7.1103(a)(1)(ii).) Similar distance rules (i.e., one and one-half feet from curb or gutter "so as to permit drainage") are stated for placement of additional leaves and other small green waste in the street for collection when, from the period of November 1 through December 31 of each year, the organic recycling container is full. (§ 4-7.1103(a)(2).) Large green waste shall not extend into the street more than three feet, and leaf piles shall not extend into the street more than

7.

four feet.  (§ 4-7.1103(a).)  No large green waste trimming piles or leaf piles may be placed near sewer clean-outs or drains.  (§ 4-7.1103(b).)

In rejecting plaintiff's request that a negligence per se instruction be given, the trial court explained its decision was based on its "obligation as a matter of law to determine whether the statute was enacted by the City for the express purpose of ensuring the public safety of pedestrians."  We agree with the trial court that the Municipal Code provisions in question have nothing to do with the safe condition of sidewalks or of the protection of pedestrians using the sidewalks.  This conclusion follows from the clear terms of said Municipal Code provisions, which are limited to the proper placement of green waste in the street for collection purposes.  Based on the express wording and context thereof, it appears that the placement requirements for the collection of green waste are intended to prevent interference with drainage at the curb or gutter areas, and also to prevent the extension of green waste too far into the street.  Furthermore, nothing in these Municipal Code provisions mentions either sidewalks or the safety of sidewalk pedestrians.

We conclude the subject Municipal Code sections were not enacted to protect pedestrians from being injured while walking on public sidewalks, nor do they create a standard of care concerning the safe condition of sidewalks.  (See, e.g., *Selger v. Steven Brothers, Inc.* (1990) 222 Cal.App.3d 1585, 1590 [ordinance did not create a duty of care to third persons regarding the sidewalk's condition because the ordinance did not clearly so provide].)  Therefore, this was not an appropriate case for application of the negligence per se doctrine, and the trial court correctly refused to give an instruction on that theory.

The City presents an additional or separate argument for affirming the trial court's decision to refuse CACI No. 418:  the specific instruction does not apply to a public entity.  The argument is technically correct.  Where a public entity is the defendant, the more accurate instruction would be CACI No. 423, which is an analogous instruction to

8.

CACI No. 418 applicable to public entities. Thus, the failure to propose the correct instruction regarding the City is an additional ground for upholding the trial court's decision as to the City. (See *Thompson Pacific Construction, Inc. v. City of Sunnyvale*, *supra*, 155 Cal.App.4th at p. 547 [party must have requested and presented a legally correct instruction].)

We note the minor differences between the two instructions are apparently due to the distinct statutory basis for liability against public entities and do not impact our analysis or conclusion. The concept of negligence per se can be applied to public entities under the specific statutory framework of Government Code section 815.6. It has been recognized that Government Code section 815.6 "applies to public entities the familiar rule of tort law that violation of a legislatively prescribed standard of care creates a rebuttable presumption of negligence." (*Lehto v. City of Oxnard* (1985) 171 Cal.App.3d 285, 292; see also *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, 1185, fn. 3 [Gov. Code, § 815.6 "applies the negligence per se doctrine to public entities"].) Under this section, "the government may be liable when (1) a mandatory duty is imposed by an enactment, (2) the duty was designed to protect against the kind of injury allegedly suffered, and (3) breach of the duty proximately caused injury." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 348.) The trial judge decides the issues of whether the statute imposes a mandatory duty on the public entity and whether it was designed to protect against the type of harm suffered. (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499.) Generally, because of the close parallel to the analysis under Evidence Code section 669, "[d]iscussions of whether a mandatory duty exists under Government Code section 815.6 and whether a standard of care has been legislatively prescribed under Evidence Code section 669 are … interchangeable." (*Brenneman v. State of California* (1989) 208 Cal.App.3d 812, 816–817, fn. 2.)

Here, our analysis and conclusion that the subject Municipal Code sections do not create a duty of care to plaintiff clearly apply with equal force to both defendants—the

9.

City as well as the House. As we have stated, this was not a proper case for instructing the jury on the negligence per se theory; and that would be true regardless of which version of the instruction were considered. The trial court did not err in refusing to instruct the jury on that theory.

**III. Special Verdict Was Not Fatally Defective or in Violation of Law**

As noted above, the jury found by means of special verdict that (i) the House was not negligent and (ii) the City's actions were not a substantial factor in causing plaintiff's harm. Therefore, plaintiff took nothing. Plaintiff attacks the legal validity or consistency of certain aspects of the special verdict. As explained below, plaintiff has failed to demonstrate the existence of any error, much less reversible or prejudicial error.

A. <u>Overview of Special Verdict</u>

We first summarize in greater detail the nature and effect of the special verdict that was reached by the jury. As noted, in making its findings, the jury utilized three special verdict forms that were agreed to by the parties, identified as Special Verdict No. 1, Special Verdict No. 2 and Special Verdict No. 3.[2] Special Verdict No. 1 addressed the cause of action against the City for dangerous condition of public property; Special Verdict No. 2 addressed the cause of action against the House for general negligence; and Special Verdict No. 3 concerned damage amounts and comparative negligence.

Special Verdict No. 1 and Special Verdict No. 2 each contained a series of questions that correlated to the essential elements of the respective cause of action under consideration. On Special Verdict No. 1, the jury responded "no" to question No. 5, which asked: "[w]as the dangerous condition a substantial factor in causing harm to [plaintiff]." Thus, the jury found that an essential element of plaintiff's case against the

[2]    We refer to the entire verdict of the jury as simply the verdict or special verdict; we refer to the discrete parts of the verdict and/or the special verdict forms by the title given to each—i.e., Special Verdict No. 1, Special Verdict No. 2 and Special Verdict No. 3.

10.

City was not established. (See *Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 9 (*Milligan*) [causation an essential element]; Gov. Code, § 835 ["a public entity is liable for injury *caused by a dangerous condition of its property* if the plaintiff establishes … the injury was *proximately caused by the dangerous condition*" (italics added)].) To prove the element of causation, plaintiff was required to show that "the dangerous condition in question was a substantial factor in causing his … harm." (*Milligan*, *supra*, 120 Cal.App.4th at pp. 8–9; accord, CACI No. 1100; CACI No. 430.) The jury was properly instructed on the meaning of what constitutes a substantial factor for purposes of causation (see CACI No. 430), and found it was not shown. There is no liability on a cause of action for dangerous condition of public property where, as here, the plaintiff fails to establish causation by proving the defendant's conduct was a substantial factor in bringing about his harm. (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 312, 314.)

On Special Verdict No. 2, the jury responded "no" to question No. 1, which asked "[w]as [the House] negligent?" Since the only cause of action against the House was for negligence, the finding of no negligence manifestly defeated any potential liability against the House for plaintiff's injuries. In short, the jury unequivocally found that neither the City nor the House were liable to plaintiff.

In addition, Special Verdict No. 1 and Special Verdict No. 2 both specifically instructed the jurors that if any one of the necessary elements (such as negligence or causation) of the cause of action was not found—i.e., if the jurors answered "no" to those questions—the number "zero" should be inserted next to the respective defendant's name in question No. 3 of Special Verdict No. 3. Question No. 3 of Special Verdict No. 3 involved the "percentage of responsibility for [plaintiff's] harm" assigned to each party, or comparative fault. As instructed, the jury inserted the number zero (i.e., zero percent fault or responsibility) next to the House and the City. Special Verdict No. 3 also found that plaintiff was 100 percent at fault for his accident.

11.

After the above verdict was announced, the jury was polled. Each of the above findings of the jury were reached by the agreement of at least nine of the 12 members of the jury, as required by law. (Code Civ. Proc., § 618; Cal. Const., art. I, § 16.)

B. Plaintiff's Challenge to Special Verdict Without Merit

We review the legal validity of a special verdict de novo. (*Singh v. Southland Stone, U.S.A., Inc*. (2010) 186 Cal.App.4th 338, 358.) A special verdict is inconsistent if there is no possibility of reconciling its findings on the essential issues. (*Fuller v. Department of Transportation* (2019) 38 Cal.App.5th 1034, 1038.) If a special verdict is not fatally inconsistent or otherwise hopelessly ambiguous, the court may interpret the verdict from its language considered in connection with the pleadings, evidence and instructions in the record. (*Ibid*.; *Woodcock v. Fontana Scaffolding & Quip. Co.* (1968) 69 Cal.2d 452, 456–457; see also *Zagami, Inc. v. James A. Crone, Inc*. (2008) 160 Cal.App.4th 1083, 1092; *All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1223.) Even if a defect in the special verdict is shown, we apply a harmless error analysis. (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1244.)

Plaintiff argues a fatal inconsistency existed in the special verdict because, in response to question No. 1 of Special Verdict No. 3, four jurors indicated when polled that they stated a dollar amount of $2,700 as the medical expenses incurred by plaintiff.[3] The other eight jurors answered zero to that question on medical expenses. We reject plaintiff's assumption that this circumstance caused the findings on the special verdict to be fatally inconsistent. As the trial court observed shortly after the jury was discharged, the jurors proceeded to answer the question on medical expenses or damages because, under the written special verdict forms, they were not told to do otherwise. Thus, although the question of damages was clearly superfluous in light of the jury's prior

---

[3] Attorneys for the City and the House argued in closing argument the only possible damage amount shown by plaintiff at trial for medical expenses was $2,700 for his chiropractic bills.

12.

findings of nonliability on Special Verdict No. 1 (no causation) and Special Verdict No. 2 (no negligence), the jurors were simply following the trial court's general instructions to address each question unless told not to do so. The trial court explained: "The Court finds that [the verdict is] in order because they should have never got to damages because, number one, they found [the House] not negligent. And although they found the City negligent, they also found that it was not a substantial factor in causing [plaintiff's] harm. So technically they shouldn't have gotten to the damages portion. [¶] But the verdict was simplified so that they wouldn't—if we had given written instructions, that would have told them what to do in terms of going to the damages or not going to the damages. I think it would have been too cumbersome. And so everyone approved the verdict form as is." We agree with the trial court's reasonable interpretation of the verdict. Additionally, we note the complete wording of question No. 1 of Special Verdict No. 3 reflects that any medical expenses indicated could be entirely due to plaintiff's own fault; therefore, the mere fact that a dollar amount was inserted would not in any way indicate who was liable.[4] Finally, the fact that there were not nine votes for any particular amount of medical expenses meant the jury never reached agreement for making any finding on *that* issue. On the other hand, the jury *did* reach agreement on lack of causation (as to the City) and on lack of negligence (as to the House), which findings were fully dispositive of the action and meant that nothing remained for the court but to enter judgment for defendants. (See, e.g., *Contreras v. Goldrich* (1992) 10 Cal.App.4th 1431, 1433–1434 [failure of jury to reach agreement on negligence issue on special verdict was not ground for reversal where the jury *did* find a lack of causation, which was dispositive]; accord, *Jackson v. AEG Live, LLC* (2015) 233 Cal.App.4th 1156, 1189.) For all of the foregoing reasons, we find no fatal inconsistency in the verdict.

---

**4**     Question No. 1 of Special Verdict No. 3 specifically stated that the jurors should "not reduce the damages based on the fault, if any, of [plaintiff] …."

13.

Based on the same assumptions, plaintiff also argues that inasmuch as four jurors had indicated $2,700 in medical expenses were incurred, while the other eight answered zero, that portion of the verdict violated the legal requirement of three-fourths agreement. (Code Civ. Proc., § 618; Cal. Const., art. I, § 16.) We disagree. Because the medical expense issue was rendered superfluous once defendants' nonliability was established by the prior findings in Special Verdict No. 1 and Special Verdict No. 2, the issue no longer had any relevance to the case and so jury assent on that issue was unnecessary.

We conclude that plaintiff has failed to demonstrate the special verdict was fatally inconsistent or otherwise legally invalid.

## IV. No Prejudicial Error as to Special Verdict Form

Lastly, plaintiff argues the special verdict form was incomplete and invalid because it did not allow the jury to make a separate finding of plaintiff's negligence in the portion of Special Verdict No. 3 that addressed comparative fault. Question No. 2 thereof asked the jury if "[plaintiff's] negligence [was] a substantial factor in causing his harm[,]" but failed to first ask whether he was negligent. Plaintiff argues this omission violated the rule that a special verdict is fatally defective if it does not allow the jury to resolve every controverted issue. (See *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 136–137 [necessary element of failure to warn theory improperly omitted from special verdict].) We reject plaintiff's contention because the error, if any, was clearly not prejudicial. (*Taylor v. Nabors Drilling USA, LP*, *supra*, 222 Cal.App.4th at p. 1244 [harmless error standard applies to special verdict issues].) The purported error was nonprejudicial because in the jury's findings under Special Verdict No. 1 and Special Verdict No. 2, both defendants were not liable to plaintiff as a matter of law based on the failure by plaintiff to prove essential elements of his claims against them. Thus, comparative fault did not come into play in this case, as neither defendant had any legal responsibility for plaintiff's injury. That being so, any defect in the special verdict

14.

form relating to comparative fault was manifestly harmless. (See Cal. Const. art. VI, § 13; Code Civ. Proc., § 475.)

## DISPOSITION

The judgment of the trial court is affirmed. Defendants are awarded costs on appeal.


LEVY, Acting P.J.

WE CONCUR:


FRANSON, J.


PEÑA, J.