Filed 8/4/23  Perez v. City of Berkeley CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| MIGUEL ANGEL PEREZ,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>CITY OF BERKELEY,<br><br>　　　Defendant and Respondent. | A164842<br><br>(Alameda County<br>Case No. RG18891042) |

Plaintiff and appellant Miguel Angel Perez sued defendant and respondent the City of Berkeley (the City) under Government Code section 835[1] for maintaining a dangerous condition of public property for injuries he sustained after slipping and falling in a "trash corridor" in a City-owned building while performing his janitorial work duties.  Concluding that Perez had failed to raise a triable issue of fact as to whether the City had actual or constructive notice of the dangerous condition in its building, the trial court granted the City's summary judgment motion.  It further found that even if the City had the requisite notice, the trash corridor did not constitute a "dangerous condition."

---

[1]　All statutory references are to the Government Code unless otherwise indicated.

1

We conclude the trial court erred in granting the City's motion. A triable issue of fact existed regarding whether conditions in the corridor constituted a dangerous condition of public property. In addition, the evidence – including all reasonable inferences drawn from the evidence – would allow a trier of fact to find the City had actual notice of the dangerous condition. Accordingly, we will reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Incident

The City contracted with Universal Building Services and Supply Co. (UBS) to provide janitorial services at 1947 Center Street in Berkeley, a building owned by the City. Perez, a UBS employee who worked as a nighttime janitor at the Center Street property, was responsible for cleaning the building's upper floors and part of the basement, and a co-worker was responsible for the rest of the building. As part of his duties, Perez collected trash in a large metal cart which he hauled to the ground floor for disposal. There, he had to descend a ramp and then move the cart through the trash corridor to reach the trash receptacles outside the building.

During his shift on the night of September 16, 2016, while in the process of moving the trash cart through the corridor, Perez slipped on broken glass shards. He fell and hit his head against stacked recycling bins lining the corridor; the bins fell on him, and he suffered injuries.

### The Complaint

In January 2018, Perez sued the City, asserting multiple causes of action, including one under section 835 for dangerous condition of public property.[2] His complaint alleged that on the night of September 16, 2016,

---

[2] The complaint alleged five additional causes of action: (1) public entity vicarious liability for the acts or omissions of a public employee (§ 815.2); (2)

2

when he slipped and fell in the City's Center Street property, the trash corridor between the ramp and the exit door to the street was dimly lit; the corridor was lined with "unstably stacked blue recycling bins filled to capacity;" and the floor was strewn with glass and other debris. He did not see the glass because the area was windowless and dimly lit. He unknowingly stepped on the broken glass strewn on the floor which caused his foot to slip, leading the "already unstable stacked recycling bins to fall on him and pin him to the ground." He lost consciousness for at least five minutes and was trapped, unable to move from the weight of the bins. The incident caused him to sustain severe bodily injuries. As a result of his injuries, he suffered lost earnings and was not able to return to work or be gainfully employed.

### Summary Judgment

The City moved for summary judgment on Perez's entire complaint, or, in the alternative, summary adjudication on various individual claims and issues if summary judgment were not granted. With respect to the dangerous condition of public property claim, the City argued that Perez could not prove two of its four elements, namely, that the City's property constituted a dangerous condition, and that the City created the dangerous condition or had notice of it. As to the first contention – whether its property constituted a dangerous condition – the City argued that the small shards of glass which caused Perez to slip and fall were so inconsequential that they did not pose a substantial risk of injury to someone exercising due care. As to the second contention – whether the City created the condition or had notice of it – the City asserted there was no evidence that it created the glass shards on the

---

negligent hiring; (3) negligent supervision; (4) negligent retention; and (5) gross negligence.

floor or that it ever had actual or constructive notice of them. Additionally, the City argued that even if Perez could prove up all elements of his dangerous condition of public property claim, the City was nonetheless immune from liability as a "reasonable omission" under section 835.4, subdivision (b), which shields a public entity from liability arising from a dangerous condition if it establishes that its failure to take action to protect against the risk of injury was reasonable.

In opposition, Perez argued that the City was attempting to artificially narrow the scope of the case by focusing only on the glass shards. He proffered evidence of bulky wheeled trash bins stacked on top of each other in a narrow, dimly lit trash corridor strewn with other debris, arguing these issues constituted a dangerous condition posing a substantial risk. Perez further argued that City employees had negligently stacked the carts in the trash corridor, and the City had both actual and constructive notice of the corridor's dangerous condition. Perez disputed all but two of the 16 proffered facts the City tendered as undisputed. After the City filed its reply, Perez filed a sur reply, and the City filed a sur reply in response.

Following a hearing, the trial court granted the City's motion for summary judgment on the dangerous condition of public property claim.[3] The court found the shattered glass was the "proximate cause" of Perez's injury and that the City had neither actual or constructive notice of the glass. Even "[a]ssuming arguendo the [C]ity did have notice, the [c]ourt [found] the risk posed by the shattered glass and stacked bins was minor."

---

[3] The court also granted summary adjudication of all other causes of action, reasoning that a public entity cannot be sued for negligence arising from the physical condition of public property in a premises liability case. Perez concedes that summary adjudication was proper as to these causes of action as his sole remedy is a section 835 dangerous condition claim.

Perez unsuccessfully moved for reconsideration and judgment was entered in favor of the City. This appeal ensued.

**DISCUSSION**

## I.     Applicable Law

"The purpose of summary judgment under Code of Civil Procedure section 437c 'is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' [Citation.] 'Summary judgment is appropriate only "where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." ' [Citation.] A moving defendant bears the burden to show that the plaintiff cannot establish one or more essential elements of the cause of action, or that there is a complete defense to that cause of action. [Citations.] If the defendant meets this burden, 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or defense thereto.' " (*Hassaine v. Club Demonstration Services, Inc.* (2022) 77 Cal.App.5th 843, 849–850.) A court may grant a motion for summary judgment only if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see also *Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 304].)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We "consider all of the evidence" and all of the "inferences" reasonably drawn therefrom (Code Civ. Proc., § 437c, subd. (c)) and must view the

5

evidence and inferences "in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; *Creekridge Townhome Owners Assn., Inc. v. C. Scott Whitten, Inc.* (2009) 177 Cal.App.4th 251, 255 ["Because a summary judgment denies the losing party its day in court, we liberally construe the evidence in support of that party and resolve doubts concerning the evidence in that party's favor."].)

Section 835 "is the sole statutory basis for a claim imposing liability on a public entity based on the condition of public property." (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 438.) According to section 835, " '[e]xcept as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity . . . created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' " (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 565–566.)

## II. Dangerous Condition

Perez argues the court's summary judgment in favor of the City should be reversed because the City never shifted the burden to him since by solely focusing on the glass shards it failed to address all the hazards alleged in his complaint that comprised the dangerous condition in the trash corridor. Even if the burden shifted, he argues that evidence raised triable issues of

6

fact as to whether the trash corridor was a dangerous condition of public property.

Section 830 defines a "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) Conversely, section 830.2 explains that a condition is "not dangerous" if "the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property . . . was used with due care" in a reasonably foreseeable manner. (§ 830.2.) "Whether liability may be imposed under section 835 for injury caused by a dangerous condition of public property is ordinarily a question of fact to be decided by the trier of fact. [Citation.] However, the issue may be decided as a matter of law where reasonable minds can only come to one conclusion." (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 7 (*Milligan*).)

Here, even if we assume without deciding that the City met its burden of showing Perez could not establish the trash corridor constituted a dangerous condition and shifted the burden on summary judgment to Perez, we conclude that Perez presented sufficient evidence to show a triable issue as to whether the trash corridor constituted a dangerous condition. Based on the evidence presented by Perez, a trier of fact could reasonably conclude the trash corridor created a substantial risk of injury when used with due care in a foreseeable manner.

7

The record includes ample evidence of stacked, wheeled garbage or recycling bins in the trash corridor.  Perez included photographs depicting the corridor, such as this one:



There is one-page memo by a UBS safety coordinator prepared the day after the accident, noting that the "[t]he area [was] crowded with trash barrels stacked up on two tiers and the two trash bins [were] located at the end of the storage room making difficult to dispose the trash into it."  Perez also included the declaration of Andreina Quiroz, another janitor in the 1947 Center Street property, who testified that throughout the summer of 2016, "there were two-wheeled trash carts in the trash corridor" at the property which "had been stacked two high and two deep," adding this was "a common

occurrence." The record also includes evidence that the stacked trash bins were partially full or full. Perez testified in deposition that the stacked carts were "full to capacity with recyclable material." Quiroz testified that the stacked trash carts were nearly "half-full of paper."

Perez submitted additional evidence regarding the narrowness of the trash corridor as well as its dim lighting. Quiroz testified that "[d]ue to the narrowness of the trash corridor and the amount of waste carts lined up [there], [she] had to navigate the trash corridor walking backways pulling the employee trash cart." Evan Lane, a paramedic who responded to Perez's distress call the night of his fall, stated that the lighting "was dim inside" the "tunnel" and recalled needing flashlights to provide aid to Perez. He also noted that the passageway for walking was "narrow."

Perez also presented evidence speaking to the dangerousness of the trash corridor. Quiroz testified that before Perez's injury, the carts nearly fell on her. Paramedic Lane testified, "You don't want to stack trash bins with wheels on top of each other, especially if they're full of stuff." He also commented that the corridor presented "unsafe conditions," adding that "it's actually a fire hazard. It prevents ingress and egress out of the building. I mean, if a large number of people needed to move out of this building at once, that's a huge hazard." Phillip Harrington, the director of the City's Public Works Department, testified in deposition: "I don't believe lifting and stacking any type of loaded cart on top of another cart is a safe practice."

Considering this evidence, reasonable minds may not reach only one conclusion as to whether a dangerous condition existed in the trash corridor, or that the City established a trivial or non-dangerous condition as a matter of law. The evidence permits a reasonable person to conclude that a substantial risk of injury is involved when the hallway is used with due care

in a reasonably foreseeable manner. Accordingly, we conclude a triable issue of material fact exists as to whether the conditions in the trash corridor were dangerous.

The City argues that the conditions in the trash corridor in the aggregate still did not constitute a dangerous condition because they did not pose a substantial risk to someone using due care. We disagree that the evidence permits only this conclusion. Perez presented evidence that to do their job of disposing of the building trash, UBS janitorial staff had to traverse the trash corridor to dump collected trash into the outside receptacles. He also presented evidence that when the accident occurred, he was simply on an evening shift carrying out his usual work, attempting to perform the routine task of removing trash from the building. He slipped and fell and the trash bins fell on him in the process of carrying out his regular work duties. Thus, reasonable minds may differ whether the trash corridor presented a substantial risk to someone exercising due care, and thus whether it constituted a dangerous condition was not an issue to be decided as a matter of law on summary judgment.

Observing that the "critical element for imposition of liability under section 835 is causation," the City further contends that the causation element is missing with respect to the multiple conditions Perez alleged to be dangerous in the trash corridor, i.e., the stacked trash bins, poor lighting, and narrow hallway. The City adds that because Perez "readily admit[ted] the glass was the only 'but-for' cause of the alleged incident," these other factors are irrelevant. However, the City has forfeited appellate consideration of this causation argument because it never raised it in the trial court. " 'A party is not permitted to change his petition and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but

manifestly unjust to the opposing litigant.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12; *Estate of Moore* (2015) 240 Cal.App.4th 1101, 1109; *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal.' "].)

The City's summary judgment motion expressly challenged whether Perez could demonstrate only two of the four elements of his dangerous condition of public property claim: (1) whether the trash corridor was a dangerous condition, and (2) whether the City either created the dangerous condition or had actual or constructive notice of it. The City's motion did not seek to establish Perez was unable to prove causation. Accordingly, the City cannot argue Perez's inability to prove up this element on appeal as grounds to avoid reversal.[4]

---

[4] Had the City preserved the argument on appeal, we would not find it persuasive. To establish causation in a dangerous condition of public property claim, "[a] plaintiff must show that the dangerous condition was a substantial factor in causing his or her harm. [Citation.] ' "If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries." ' [Citation.] The issue of causation, like the existence of a dangerous condition, usually presents a question of fact. [Citation.] However, the issue can be decided as a matter of law where the facts of the case can permit only one reasonable conclusion." (*Milligan, supra,* 120 Cal.App.4th at pp. 8–9.) Here, Perez presented evidence that, in all likelihood, would have been sufficient to create a triable issue of fact as to whether the dangerous condition of the trash corridor was a substantial factor in causing his injuries. This evidence included that the corridor was narrow, a feature compounded by the stacked garbage bins lining its walls. It could reasonably be inferred that the limited space compelled him to maneuver his trash cart while walking backwards and adjacent to the stacked garbage bins, and this prevented him from seeing the broken glass shards on which he slipped and caused the stacked garbage bins to fall on him.

11

## III.  Notice

Perez further argues summary judgment should be reversed because he presented evidence that the City both created the dangerous condition and knew about it for months.

Under section 835, a plaintiff must show that the dangerous condition was "created" through "[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment." (§ 835, subd. (a).)  A plaintiff unable to establish the public entity "created" the dangerous condition may still prevail by showing the public entity had "actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835, subd. (b); *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 778.)

Even if we again assume without deciding that there was insufficient evidence showing the City created the dangerous condition, we readily conclude Perez presented enough evidence to create a triable issue of fact as to whether the City had actual or constructive notice of the dangerous condition of the trash corridor.

Section 835.2 provides: "(a) A public entity had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 835 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character. [¶] (b) A public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have

discovered the condition and its dangerous character."[5]  Perez presented enough evidence demonstrating triable issues of fact as to notice.

For actual notice, Perez presented evidence the City was aware of various problems in the trash corridor as early as July 2016.  The record includes early July 2016 e-mails from Roger Rushing, a senior building inspector for the City, to a City Public Works distribution list in which he writes that during the course of a daily inspection of remodeling occurring at the 1947 Center Street property, he ended up moving a blue trash bin to the basement and "[w]hen [he] got to the loading dock the entire corridor was filled with empty blue containers.  On the right side of the corridor the containers are stacked 2 high 2 deep."  He noted that "facilities maintenance . . . use this access way to the freight elevator" and that "[i]n order to clear the path to the rollup door [he] had to stack additional carts again [2] high and 2 deep further back in the access corridor."  In the e-mail, he asks who is responsible for "removing surplus wheeled bins" and "for keeping the access to the freight elevator clear."  On August 19, 2016, Rushing sent a follow-up e-mail with the added information that the garbage bins at the end of the corridor were inaccessible to janitorial staff.  He

---

[5]  "On the issue of due care, admissible evidence includes but is not limited to evidence as to: [¶] (1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property. [¶] (2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition." (§ 835.2, subd. (b).)

13

counted "39 paper bins lined up in the corridor, 10 of which [were] full of paper and card board [*sic*]," noting that "nothing can come in and nothing can go out at this time." He also noted, "I'm sure there are plenty of people who know the condition exists, but either aren't complaining or are just throwing up their hands in frustration." He implored City Public Works staff to "reduce the number of bins in the corridor so that full ones can be accessed and emptied" and "maintain the aisle way so that the corridor can be used other than a parking lot [for] full and empty blue cans." The distribution of this e-mail included additional City employees: Dionne Early, facility or property manager for the 1947 Center Street property; Perry Fletcher, the facility maintenance superintendent manager; Manual Hector, a City worker; and Paul Kaushal, a City project manager, and Phillip Harrington, the Public Works director, were also copied. In his deposition testimony, Harrington acknowledged that he was "aware of issues, potential issues regarding the carts . . . in the basement area of 1947" before the date of Perez's accident from June through September 2016. The record also includes deposition testimony from Manuel Hector who recalled seeing stacked trash carts in the 1947 Center Street property and who had been asked to have his staff empty the containers in the trash corridor "because they were complaining that all of the containers were full and needed to be serviced." Also included in the record was an e-mail from Paul Kaushal to Dionne Early dated August 31, 2016, with the subject "Garbage and Recycling at 1947" which stated: "I realize you know about this already. It's getting out of hand and needs to be addressed."

Given this evidence, we do not believe that reasonable minds can reach only one conclusion as to whether the City had notice of the dangerous condition in the trash corridor. The evidence permits a reasonable person to

conclude the City had actual notice of it and sufficient time prior to Perez's injury to have taken measures to protect against the dangerous condition. Accordingly, we conclude a triable issue of material fact exists as to whether the City had, at minimum, actual notice of the dangerous condition in the trash corridor necessary for dangerous condition liability.[6]

The City argues that Perez waived his right to argue the City had notice of the small pieces of glass he slipped on because he failed in his appellate brief to address notice with respect to the glass shards, which were the "but-for" cause of the accident. The City also argues, in any event, that Perez nonetheless failed to provide any competent evidence that the City had actual notice of the small pieces of glass in the corridor. According to the City, the evidence demonstrates that when Perez completed his prior shift at 1:30 a.m. on September 16, 2016, there was no glass on the ground when he left, and it only appeared later in the day when he returned to work and slipped on it around 10:30 p.m. The City notes the absence of any evidence of complaints about glass or other debris in the corridor on the date of Perez's fall.

We conclude Perez did not waive his notice argument because he did not address the City's awareness of glass shards on the floor of the trash corridors specifically. The City's argument is improperly premised on the notion that the glass shards are the only alleged dangerous condition that matters, which is not the case. " '[T]he scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the

---

[6]     Because the statutory element of notice is written in the disjunctive (actual *or* constructive notice) (see § 835, subd. (b)), and we have determined that reasonable jurors could find the City had actual notice of the conditions in the trash corridor, it is not necessary for us to consider the issue of constructive notice.

15

claims framed by the pleadings.' " (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.) A moving party is not required to go beyond the allegations in the operative complaint, and similarly, an opposing plaintiff may not assert claims or theories not encapsulated by the complaint's allegations. (*Ibid.*) In considering what issues are properly raised in opposition to a summary judgment motion, we construe the allegations of the complaint liberally. (See *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1257.) Here, Perez's complaint alleged multiple hazards in the trash corridor constating a dangerous condition. While he attributed the slip and fall to the glass shards, his testimony does not preclude other substantial factors as the cause of his injury. Although Perez presented no evidence regarding the City's awareness of glass shards strewn on the floor of the trash corridor specifically, the evidence he submitted regarding the City's actual knowledge of the various deficiencies and dangerous conditions in the trash corridor was adequate to preserve his claim.

As for the lack of competent evidence that the City had actual notice of the small pieces of glass in the corridor, we do not see this gap as sufficient to sustain summary judgment in the City's favor. Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Weiss v. People ex rel. Department of Transportation* (2020) 9 Cal.5th 840, 864 ["Courts deciding motions for summary judgment or summary adjudication may not weigh the evidence but must instead view it in the light most favorable to the opposing party and draw all reasonable inferences in favor of that party."].) Further, we "resolve doubts about the propriety of

16

granting the motion in favor of the party opposing it." (*Diep v. California Fair Plan Assn.* (1993) 15 Cal.App.4th 1205, 1207.) Liberally construing Perez's evidence and resolving any doubts about the propriety of summary judgment in his favor, we conclude the evidence was sufficient to show the trash corridor was a crowded mess that made it difficult and dangerous for janitorial staff to carry out their job duties. While no evidence was presented specifically about notice of glass shards, based on the evidence presented a trier of fact could reasonably infer the City's awareness that the trash corridor was in a state of general disorder and disarray (including the presence of debris) in the summer of 2016. This evidence was sufficient to create a triable issue of material fact and survive summary judgment.

## IV.  "Reasonable Omission" Immunity

Finally, Perez disputes the City's argument that it was entitled to "reasonable omission" immunity under section 835.4, subdivision (b).

Section 835.4, subdivision (b) provides in full: "A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable." (§ 835.4, subd. (b).) "Under section 835.4, subdivision (b) . . . the question of the reasonableness of the state's action in light of the practicability and cost of the applicable safeguards is a matter for the jury's determination." (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 720.)

In its summary judgment motion, the City argued it was entitled to section 835.4 immunity because not finding and removing the alleged glass shards in the trash corridor was reasonable as a matter of law since the City had hired UBS to clean the floors, including the basement hallways, on a

17

daily basis. According to the City, its "alleged 'failure' to take yet other preventative measures beyond daily floor cleaning was reasonable" and it was thus entitled to "reasonable omission immunity." In opposition, Perez asserted that the issue was not limited to glass shards and was in any event a matter for jury determination. He argued that the City had adequate time to remedy the dangerous condition in the trash corridor and multiple opportunities to address it prior to Perez's injury. He also noted that the City had made no showing of any financial or political constraints that would have prevented it from addressing the problems in the trash corridor. The trial court did not rule on this asserted defense in its order.

In our de novo review, we conclude the City's proffered reasonable omission immunity defense would not have been a proper basis for granting the City summary judgment. Section 835.4, subdivision (b) further instructs that "the reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury." (§ 835.4, subd. (b).) In its moving papers, and again on appeal, the City asserts only that its conduct was reasonable because it had hired UBS to clean the floors, including the trash corridor. The City has presented no evidence or argument related to the time and opportunity it had to take action; the probability and gravity of potential injury to other persons foreseeably exposed to the risk of injury; or the practicability and costs of protecting against the risk of injury. Having failed to address the considerations required by the statute, the City has not met its burden of demonstrating its entitlement to reasonable omission immunity as a matter of law and the

18

burden never shifted to Perez to show a triable issue of fact exists as to the defense.

## DISPOSITION

The summary judgment in favor of the City is reversed. Perez shall recover his costs on appeal.

_____

Petrou, J.

WE CONCUR:


_____

Tucher, P. J.


_____

Rodriguez, J.

A164842

20