Filed 10/7/25  Vance v. City of Riverside CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MALYAH JANE VANCE et al., | D084181 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. RIC1905830) |
| CITY OF RIVERSIDE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Riverside County, Christopher B. Harmon, Judge.  Reversed.

Rizio Lipinsky Law Firm, Greg Rizio, Eric I. Ryanen and Lynn P. Whitlock for Plaintiffs and Appellants.

Office of Riverside City Attorney and Rebecca McKee-Reimbold for Defendants and Respondent.

Plaintiff and appellant Malyah Jane Vance appeals from a summary judgment in favor of defendant and respondent City of Riverside (City) on

Vance's claim under Government Code sections 830 and 835[1] that City maintained a dangerous condition at the intersection of Via Zapata and Canyon Crest Drive (the intersection or at times, the subject intersection), where another driver struck her vehicle, causing her injuries.[2] The court ruled City had met its initial burden to show Vance's injuries were not caused by any dangerous condition at the accident site, and Vance had not raised a triable issue of material fact on the issue of whether any dangerous condition proximately caused her injuries. Challenging some of the court's evidentiary rulings, Vance contends the court erred by granting summary judgment; that the evidence raised triable issues of material fact as to the existence of a dangerous condition, including on the issue of causation, and on design immunity. Vance argues that even if City had design immunity, it was still liable because changed circumstances caused the design to constitute a dangerous condition and City failed to warn of the dangerous road condition.

The City's sole responding argument is that Vance failed to demonstrate a triable issue of material fact on the issue of causation. Exercising the required de novo review, we conclude Vance presented issues for a trier of fact on causation, as well as whether the intersection presented a dangerous condition and design immunity, precluding summary judgment. We reverse.

---

[1] Undesignated statutory references are to the Government Code.

[2] Vance also sued the driver of the vehicle that hit her as well as defendants Ara and Vahram Sevacherian, who also obtained summary judgment. Vance is not appealing the summary judgment for the Sevacherians. Vance's mother, Jade Downey, sued City for negligent infliction of emotional distress, a claim that the California Supreme Court revived from demurrer. (*Downey v. City of Riverside* (2024) 16 Cal.5th 539, 544, 561.) Vance asserts that the parties have stipulated to stay Downey's claim pending this appeal.

2

FACTUAL AND PROCEDURAL BACKGROUND

On review of a summary judgment, we state the undisputed facts and liberally construe the evidence in support of Vance, resolving evidentiary doubts in her favor. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.) We consider all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. (*Ibid.*)

In December 2018, Vance was driving eastbound on Via Zapata and entered the intersection of Via Zapata and Canyon Crest Drive when her vehicle was struck by another vehicle traveling southbound on Canyon Crest Drive. Canyon Crest Drive's posted speed limit is 45 miles per hour, but the "critical speed," which means the speed at which 85 percent of drivers drive, is 52 miles per hour. In the moments before the collision Vance was lost; she was using a navigation system and was on her cell phone speaking to Downey who was attempting to give her directions. Vance does not remember anything from that day, but was told she did not stop at the stop sign. The other driver estimated he was traveling on Canyon Crest Drive at 50 miles per hour.

Vance sued City and others. Her operative third amended complaint includes a cause of action under section 835, alleging City created, or permitted to exist a dangerous condition of public property so as to cause her damage. She alleged the traffic markings, signals, warnings, medians and other fixtures were defective in design, manufacture and warning, creating an unreasonable and foreseeable risk of injury to occupants of vehicles in the intersection. She alleged those conditions, combined with the condition of the pavement, road design, and speed limit, created a dangerous condition of public property.

City moved for summary judgment. It pointed out that Vance in discovery responses had stated that the facts supporting her dangerous condition claim were that (1) the line of sight of southbound Canyon Crest Drive from Via Zapata was too short; (2) the line of sight was limited by designated parking along Canyon Crest Drive; (3) the line of sight was limited by large trees planted in the parkway along Canyon Crest Drive; and (4) the 45-mile-per-hour speed limit was unsafe. Explaining that the subject intersection had been part of design improvement plans in 1992 and 2009, as well as a 2017 speed survey, City argued it was entitled to judgment as a matter of law based on design immunity under section 830.6. It also argued that on the day of the collision the intersection did not constitute a dangerous condition; the danger arose only from Vance being distracted by her cell phone and navigation system, it had no actual or constructive notice of any dangerous condition before the collision, and plaintiffs could not prove a dangerous condition by evidence of any substantially similar prior accidents. City argued there was no substantial evidence that any condition it created proximately caused Vance's injuries.

City relied in part on Vance's deposition testimony that she had no recollection of the events of that day, but knew the reason the accident happened was because she did not stop for a stop sign. It presented declarations from City traffic engineers Steve Libring and Nathan Mustafa. Libring stated that in 2009, while working as a traffic engineer for City, he was assigned a traffic improvement project involving the Canyon Crest Drive and Via Zapata intersection, involving, among other things, striped parking lanes and appropriate signage adjacent to the second lanes of travel along north and south Canyon Crest Drive. As part of his project, he determined that the existing signage, including the location of the stop sign controlling

4

the intersection, as well as the limit line, were adequate. More specifically, Libring determined that the stop sign at the intersection of southbound Canyon Crest Drive and eastbound Via Zapata was "set as far forward as reasonably possible in order to accommodate drivers making a left hand turn from Via Zapata onto northbound Canyon Crest Drive" and the intersection was designed such that a driver could creep forward to obtain additional visibility. He averred that his decision to allow the location of the stop sign to remain was appropriate and reasonable under the circumstances. Libring opined that the intersection's design and City's redesign improvement plan, including the addition of parking stripes and parking restrictions, was adequate, reasonable and met with City's standard of traffic design. He stated the redesign improvement plan was not responsible for causing the collision.

Mustafa stated that the intersection's design was reasonable from an engineering standpoint; that "[t]he stop sign at the subject intersection provided adequate visibility for a driver on Via Zapata to safely turn onto Canyon Crest Drive. In addition, drivers on Via Zapata could creep forward from the limit line at the stop sign toward the edge of the lane of oncoming traffic on Canyon Crest Drive." He stated that he had approved a 45-mile-per-hour speed limit on Canyon Crest Drive as part of a 2017 traffic survey. Mustafa further reviewed a collision summary report from May 2014 to May 2019 for the subject intersection and "there [were] no allegations that any of these prior collisions were caused by obstructed views."

Vance opposed the motion, filing objections to some of City's evidence and submitting 199 additional material facts. She agreed her theory was that the subject intersection had "line-of-sight issues for vehicles entering Canyon Crest Drive from Via Zapata," her route on the day of the collision.

5

She argued that while she could not recall the collision that day, there was evidence that she never saw the other vehicle "by virtue of her having driven directly into his path." According to Vance, the line of sight distance for vehicles entering Canyon Crest Drive from eastbound Via Zapata was "far less than the applicable standards for proper and safe road design" based on American Association of State Highway and Transportation Officials (AASHTO) and Caltrans standards. She argued sight was further limited by vehicles legally parked in a designated parking lane along the northwest side of the intersection; therefore, reducing the speed limit to 40 miles per hour, as well as prohibiting parking and removing trees, would increase the line of sight to meet applicable standards. Vance argued that City service requests and work orders from 2002 to 2019 after the accident (which she summarized in her papers, as well as her additional material facts) established City was aware the intersection was dangerous due to inadequate line-of-sight and view obstructions to motorists entering Canyon Crest Drive from Via Zapata long before City in 2009 added the parking lane under the work order from which it claimed design immunity.

Vance argued there had been 13 prior accidents at the intersection in 14 years, between February 2008 and March 2022, five of which were collisions between a vehicle southbound on Canyon Crest Drive and a vehicle eastbound on Via Zapata, and three occurring between January 2009 and April 2016 after City added the parking lane but before Vance's collision. She presented evidence that local residents Jeff Waller and Mayra Flores believed the intersection was very dangerous, with visibility issues for drivers

attempting to turn onto Canyon Crest Drive from Via Zapata.[3]  She also presented deposition testimony from a police officer, Jorge Cuevas, who arrived after the accident and took photographs of the scene, which was blocked off to traffic for the collision.  Reviewing photographs, Officer Cuevas testified there was at least one car parked on southbound Canyon Crest Drive.  Vance submitted deposition testimony from another resident, Teddie Glover, a manager of an apartment complex on the corner of Canyon Crest Drive and Via Zapata, who stated that on the day of the accident there were several parked cars along Canyon Crest Drive, up the hill from Via Zapata.  Glover testified she was aware of five prior accidents that had occurred at the intersection where cars were pulling out eastbound from Via Zapata and were hit by southbound cars on Canyon Crest Drive.  She was aware of "maybe" seven or eight after Vance's accident.  Glover testified her concerns were the traffic speed, and "that you cannot see when you're trying to pull out of . . . Via Zapata onto Canyon Crest [Drive]."  According to Glover, the view obstruction was because of vehicles parked on Canyon Crest Drive.

On the issue of design immunity, Vance argued that City did not submit a legitimate engineering plan and the design was not reasonable, but even assuming City could meet those requirements, changed circumstances caused the design to constitute a dangerous condition.

Vance presented declarations from civil engineering and accident reconstruction experts.  Dale Dunlap, an expert on the standard of care for civil and traffic engineers, averred in part that the available sight distances for a car on Via Zapata were "severely deficient" and did not meet engineering standards for intersection sight distances as required by

---

[3]    The court in its ruling stated it was unable to find these declarations, but as counsel pointed out in oral argument they were attached as exhibits to the opposition papers.

AASHTO or Caltrans. He stated that the failure to provide adequate sight distance to intersection users that met Federal and State minimum standards made the intersection unsafe and dangerous, and the "deficient available sight distances . . . was [*sic*] the primary causation factor in the subject accident."

David Eisenbeisz, an accident reconstruction expert, addressed whether restricted sight distances for eastbound vehicles on Via Zapata and/or southbound vehicles on Canyon Crest Drive were significant factors in the cause of the collision. Based on photographs of the scene and Glover's deposition excerpts concerning the parked cars she saw immediately after the accident, he stated "it is most probable from [Glover's] testimony . . . and the scene photographs that there was a line of parked vehicles along the west curb of the subject accident." He averred that "[b]ecause of restricted sight distance at the [intersection of Via Zapata and Canyon Crest Drive], Ms. Vance did not perceive [the other vehicle] approaching and entered the intersection, whereupon a collision occurred between [their vehicles]." He also opined that the "parked vehicles and trees along the west side of Canyon Crest Drive at the time of the subject accident were significant factors in the inability of both drivers to make reasonable informed decisions that might have avoided the collision." He stated: "Had a clear line-of-sight between [the other vehicle and Vance's vehicle] been provided, it would have allowed [the other driver on Canyon Crest Drive] to take evasive action in time to avoid the collision."

Vance submitted Downey's declaration in which Downey stated that in the minutes before the collision, she was speaking to Vance, and could tell from the sound quality of their connection that Vance's phone was on the

8

" 'speaker' (hands-free) setting."  Downey stated she was giving Vance "turn-by-turn directions" to the intersection and told Vance to make a left turn on Canyon Crest Drive.  She stated:  "After she stopped her car at that intersection, I heard her recite, 'I'm going to go left, OK, OK, OK' in a tone and in a manner that, to my understanding, was consistent with her talking to herself while waiting to turn left, and mentally 'checking off' traffic on Canyon Crest [Drive] as it approached and cleared the intersection so she could execute the left turn."

In reply, City lodged objections to some of Vance's evidence, including to the declarations of Downey, Waller, Flores, Dunlap, and Eisenbeisz.  It argued Vance did not present evidence demonstrating line-of-sight issues were a substantial factor in causing her injuries and it was immune as a matter of law under section 830.6.  According to City, there was no "credible evidence" either that parked cars actually blocked her view of southbound Canyon Crest Drive, or that trees planted along the southbound side of Canyon Crest Drive actually blocked her view and caused the collision.  City argued that the experts provided only "speculation and improper factual and legal conclusions" that were based on Downey's "self-serving" declaration, which it argued was entirely inadmissible as based on hearsay and inappropriate speculation.  It pointed out Vance did not know whether she stopped at the stop sign or ran through it; there were no witnesses who saw Vance stop there; and "[t]he only contemporaneous information we have as to this issue is the statement of [the other driver], who provided he was driving at 50 mph when [Vance] 'suddenly' drove into the path of his vehicle."

9

The trial court granted summary judgment. Ruling on a few of the parties' evidentiary objections,[4] it found City met its initial burden of presenting evidence to show Vance's injuries were not caused by any dangerous condition at the accident site. The court reasoned: "Even assuming a triable issue exists regarding whether a condition at or near the accident site created a substantial risk of injury when used with due care, [Vance's] opposing papers fail to raise a triable issue regarding whether such a condition proximately caused the injuries. To establish causation, therefore, [Vance] must show that a physical condition of the City's property was a 'substantial factor' in bringing about [her] harm. [Citation.] A plaintiff may prove causation through direct and circumstantial evidence and reasonable inferences drawn from that evidence. [Citation.] But we cannot draw inferences ' "from thin air." ' " It found no "admissible evidence that the alleged dangerous condition of the intersection was the legal cause of Vance's unfortunate injuries following her collision with an out of state, uninsured driver." The court did not reach the issue of design immunity.

Vance filed this appeal from the ensuing judgment.

---

4    The court overruled Vance's objections to her and Downey's deposition testimony as "not well-taken"; sustained Vance's objection to portions of a traffic report in which an officer stated Vance caused the collision by failing to stop at the intersection's stop sign; and overruled Vance's objections to Libring's and Mustafa's declarations, ruling they had presented adequate foundation for their conclusions. The court did not address City's objections to the Waller and Flores declarations and sustained City's objections to Downey's declaration on ground it assumed facts, lacked foundation, called for speculation and was vague and ambiguous. It declined to rule on City's objections to an attorney declaration attaching certain deposition testimony of two other individuals as "not material."

DISCUSSION

## I. *Summary Judgment Standards and Appellate Review*

" 'A trial court properly grants a motion for summary judgment where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ' " (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.) " '[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion' " on those matters. (*Rheinhart v. Nissan North America, Inc.* (2023) 92 Cal.App.5th 1016, 1023.)

Thus here, City bears the burden of showing the court either that Vance " ' "has not established, and cannot reasonably expect to establish," ' the elements of her cause of action" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720) or there is a complete defense to that cause of action. (*Dailey v. City of San Diego* (2013) 223 Cal.App.4th 237, 249.) It can meet this burden by presenting evidence that either conclusively negates an element of Vance's causes of action or shows that Vance does not possess, and cannot reasonably obtain, evidence necessary to establish at least one element of each cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-854; *Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 979.) City " 'must demonstrate that under *no hypothesis* is there a material factual issue requiring trial.' " (*Dailey v. City of San Diego*, at p. 249, italics added, quoting *Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289-290; *Eriksson v. Nunnink* (2011) 191

11

Cal.App.4th 826, 850.) If City does not meet its burden on either point, the motion must be denied. (*Dailey*, at p. 249.)[5]

Once City satisfies its initial burden, "the burden shifts to [Vance] . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).) Vance must "set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (*Ibid.*) She may not raise a triable issue of fact by relying on evidence that is inadmissible at trial. (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 543; see also *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 945 [relying on *Perry*: the summary judgment statute " 'has always required the evidence relied on in supporting or opposing papers to be *admissible*' "].)

We review a trial court's ruling on a motion for summary judgment de novo. (*Samara v. Matar* (2018) 5 Cal.5th 322, 338; *Jackson v. Lara* (2024)

---

[5] City asserts that Vance incorrectly states its summary judgment burden when she cites the proposition that it must demonstrate "under no hypothesis" material factual issues exist requiring trial. It maintains Vance's cited authority, *Anderson v. Metalclad Insulation Corp.*, *supra*, 72 Cal.App.4th 284, applies this standard only to a defendant's summary judgment motion raising affirmative defenses. The case cited by *Anderson* for this proposition in turn cites to *Flowmaster, Inc. v. Superior Court* (1993) 16 Cal.App.4th 1019, 1026, which states: "To succeed, a defendant moving for summary judgment must 'conclusively negate a necessary element of the plaintiff's case or establish a complete defense and thereby demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial.' " (*Id*. at p. 1026.) It is not clear that the challenged language is limited to summary judgment on an affirmative defense. We need not decide the point because City raised design immunity in its motion, which is an affirmative defense. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66 (*Cornette*); *Kabat v. Department of Transportation* (2024) 107 Cal.App.5th 651, 661.) Even if City were correct, the standard applies.

100 Cal.App.5th 337, 343.) " ' "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." ' " (*Jackson*, at p. 343.) We consider " ' " " "all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' " (*Hampton v. County of San Diego, supra*, 62 Cal.4th at p. 347.) " 'We affirm the trial court's decision if it is correct on any ground the parties had an adequate opportunity to address in the trial court, regardless of the reasons the trial court gave.' " (*Wolf v. Weber* (2020) 52 Cal.App.5th 406, 410.) "[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.)

## II. *Court's Evidentiary Rulings*

Vance challenges several of the trial court's rulings on her and City's evidentiary objections. We need not resolve Vance's claims of error on these points. Even if we assume each of the court's rulings was correct, as discussed below, we conclude Vance's other evidence raises triable issues of material fact for a jury, precluding summary judgment.

## III. *Government Entity Liability for Dangerous Conditions*

"Under the Government Claims Act, a tort action cannot be maintained against a government entity unless the claim is premised on a statute providing for that liability. (See § 815.) . . . [S]ection 835 . . . ' "is the principal provision addressing the circumstances under which the government may be held liable for maintaining a dangerous condition of public property." ' [Citation.] To establish liability under section 835, a

13

plaintiff must show: '(1) "that the property was in a dangerous condition at the time of the injury"; (2) "that the injury was proximately caused by the dangerous condition"; (3) "that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) either (a) that a public employee negligently or wrongfully "created the dangerous condition" or (b) that "[the] public entity had actual or constructive notice of the dangerous condition a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." ' " (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 652-653 (*Tansavatdi*).) "[S]ection 835 expressly authorizes two different forms of dangerous conditions liability: an act or omission by a government actor that *created* the dangerous condition (§ 835, subd. (a)); or, alternatively, failure 'to protect against' dangerous conditions of which the entity had notice (*id.*, subd. (b)). The term 'protect against' is statutorily defined to include, among other things, 'warning of a dangerous condition.' " (*Tansavatdi*, at p. 653; *Kabat v. Department of Transportation, supra*, 107 Cal.App.5th at p. 660.)

A " '[d]angerous condition' " is statutorily defined as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830.) Such a condition proximately causes a plaintiff's injuries when the condition of the property is a "substantial factor" in bringing about their harm. (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 8-9.) Where a third party's negligence is a direct cause of the injury, a public entity may nevertheless be held liable if " 'the dangerous condition of its property combines with a third party's negligent conduct to inflict injury.' " (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th

14

1099, 1105; *Thimon v. City of Newark* (2020) 44 Cal.App.5th 745, 754 ["When a third party's conduct is the immediate cause of a plaintiff's harm, the question becomes whether the dangerous condition 'increased or intensified' the risk of injury from the third party's conduct"].)

Section 835 dangerous condition liability is subject to statutory exceptions, including for so-called "design immunity." (*Tansavatdi, supra*, 14 Cal.5th at p. 653.) Design immunity "precludes liability for any injury caused by 'the plan or design of . . . , or an improvement to, public property.' (§ 830.6.) [It] requires that a public entity establish three elements: '(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design.' [Citation.] Resolution of the third element—the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design—is a matter for the courts, not the jury, to decide." (*Tansavatdi, supra*, 14 Cal.5th at p. 653.) " 'The rationale for design immunity is to prevent [the fact-finder] from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design.' " (*Id.* at pp. 653-654.)

IV. *Vance's Evidence Established Triable Issues on the Existence of a Dangerous Condition*

" 'Ordinarily, the existence of a dangerous condition is a question of fact, but whether there is a dangerous condition may be resolved as a question of law if reasonable minds can come to but one conclusion. [Citation.] "[I]t is for the court to determine whether, as a matter of law, a given defect is not dangerous. This is to guarantee that cities do not become

15

insurers against the injuries arising from trivial defects." ' " (*Thimon v. City of Newark, supra,* 44 Cal.App.5th at p. 755; see *Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148.)

Vance contends there are triable issues of material fact as to whether the intersection of Canyon Crest Drive and Via Zapata was dangerous. She focuses on evidence that she acted with due care, City's notice of the dangerous condition from citizen and resident complaints about the intersection, and the existence of substantially similar accidents.[6] Vance references her own statement of material issues of fact showing line-of-sight deficiencies at the intersection were the primary cause of the collision.

Though Vance's briefing mostly incorporates prior arguments or evidence by reference, having reviewed her evidence, we are compelled to agree that the record presents triable issues of material fact as to whether the intersection was in such a condition to "create[ ] a substantial . . . risk of injury when . . . used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830.) " 'A dangerous condition of public property can come in several forms and may be based on an "amalgam" of factors.' " (*Thimon v. City of Newark, supra,* 44 Cal.App.5th at p. 754.) Courts have considered public property to be in a dangerous condition " 'because of the design or *location* of the improvement, the interrelationship of its structural or natural features, or the presence of latent hazards associated with its normal use.' " (*Bonanno v. Central Contra Costa Transit Authority, supra,* 30 Cal.4th at p. 149; see also *Curreri v. City & County of San*

---

6      Vance did not argue below, and does not contend on appeal, that City failed to meet its threshold summary judgment burden on the existence of a dangerous condition. She may not do so for the first time on appeal. (*DiCola v. White Brothers Performance Products, Inc., supra,* 158 Cal.App.4th at p. 676.)

*Francisco* (1968) 262 Cal.App.2d 603, 607-608, 610-611 [perpendicular parking on north side of street together with parallel parking on south side of street, difficulty of maneuvering a car on a steep street, and visibility problems caused by the parking situations, combined to create a dangerous condition].)

On this summary judgment record, the existence of a dangerous condition is a question of fact; it is not a situation where reasonable minds can only conclude the intersection is safe. (*Bonanno v. Central Contra Costa Transit Authority*, *supra,* 30 Cal.4th at p. 148.) Vance's experts Dunlap and Eisenbeisz discussed the restricted or deficient sight distances for cars on Via Zapata, Dunlap explaining that the sight distances did not meet engineering standards. Resident Jeff Waller stated in a declaration that he was aware of four collisions occurring at the intersection, and there were "visibility issues for drivers attempting to turn right or left onto Canyon Crest [Drive] from Via Zapata" as "[p]arked vehicles along the west curb line of Canyon Crest [Drive] north of Via Zapata block the view of approaching traffic on Canyon Crest [Drive] when attempting to enter the intersection while travelling eastbound on Via Zapata." He stated the view was better when no cars were parked on Canyon Crest Drive north of Via Zapata. He stated that speeding traffic "further complicates negotiating a turn at the intersection"; that because of the hazards, he typically rerouted to a different road. He concluded, "In short, I feel the intersection is very dangerous." Mayra Flores, a 15-year local resident, reached the same conclusions. Glover—who lived directly on the intersection's corner—described at least five accidents at the intersection involving drivers attempting to turn onto Canyon Crest Drive from Via Zapata.

17

City does not address the testimony of these experts and witnesses on the issue of the intersection constituting a dangerous condition due to the sight limitations, as demonstrated in part by prior accidents there. Generally, " '[w]here the circumstances are similar, and the happenings are not too remote in time, other accidents may be proved to show a defective or dangerous condition, knowledge or notice thereof, or to establish the cause of an accident. [Citations.]' [Citations.] 'The evidence must relate to accidents which are *similar* and which occur under *substantially the same* circumstances. [Citations.]' [Citation.] '[T]he requirement of similarity may vary in strictness according to the purpose for which the evidence is introduced. Thus, if offered to show a dangerous condition of a particular thing—such as a step—the other accident must be connected in some way with that thing; but if offered only to show knowledge or notice of a dangerous condition, an accident at the place—a broader area—may be shown.' " (*Genrich v. State of California* (1988) 202 Cal.App.3d 221, 227-228.) We conclude Vance's evidence establishes an issue for a trier of fact to determine on that point.

## V. *Vance Raised Triable Factual Issues as to Causation*

City's summary judgment argument as to causation was brief. It pointed out Vance did not remember anything from the day of the collision, and could say only that she understood the reason the collision occurred was because she failed to stop at the stop sign. It pointed to evidence that Vance did not tell her mother she actually stopped. City asserted that Downey testified Vance was distracted and that she did not know whether Vance looked before turning. It argued: "Contrary to the claims included in the [third amended complaint], there is no evidence that any parked cars or trees/vegetation blocked . . . Vance's view of southbound Canyon Crest [Drive]

18

at the time of the accident. Ultimately, the report by the Riverside Police Department memorializing the collision found . . . Vance to be at fault for the collision by failing to yield at a stop sign."

City continued: "Vance (and possibly . . . Downey) are the only ones that could testify as to whether [Vance] looked for oncoming traffic, what she saw, if her view of traffic was obstructed, what obstructed her view, by what objects, and whether [Vance] actually stopped at the stop sign. Neither [Vance nor Downey] can proffer any such evidence. Further, based on the information we do have, we know [the other driver] was driving over the posted 45 m.p.h. speed limit, but it was nonetheless determined that . . . Vance caused the accident by failing to stop for the stop sign. Because no evidence exists which might demonstrate anyone other than . . . Vance caused the collision in this matter, her claim against . . . City must fail."

The court ruled that City had met its initial summary judgment burden on causation, but that Vance did not establish a triable issue of fact in response. It reasoned: "To rebut . . . City's showing, plaintiffs relied primarily on the opinions of [their] own accident experts Eisenbeisz and Dunlap and criticisms of . . . City's expert opinions. But, as discussed above, plaintiffs offered no evidence that the Eisenbeisz and Dunlap theories represented reality. Plaintiffs argue Vance, 'was not, however, suicidal, and so the evidence she never saw defendant's vehicle exists simply by virtue of her having driven directly into his path.' . . . This . . . statement is not evidence. There is no evidence that the condition of the intersection or parking of cars diverted Vance's attention, obscured her line of sight, caused her to enter the intersection with a false sense of security that there were no other vehicles approaching, or otherwise brought about the collision. Vance was on the telephone with her mother Downey, was lost while attempting to

19

run an errand and does not remember any that happened at all on the date of the accident. There is simply no admissible evidence that the alleged dangerous condition of the intersection was the legal cause of Vance's unfortunate injuries following her collision with an out of state, uninsured driver."

"The issue of causation, like the existence of a dangerous condition, usually presents a question of fact. [Citation.] However, the issue can be decided as a matter of law where the facts of a case can permit only one reasonable conclusion." (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.*, *supra*, 120 Cal.App.4th at p. 9; see *Kaney v. Custance* (2022) 74 Cal.App.5th 201, 212.) The substantial factor test required Vance to " 'show some substantial link or nexus between omission and injury.' " (*Tansavatdi*, *supra*, 14 Cal.5th at p. 661.) A mere possibility of causation is not enough. (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 484.) " ' "If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries." ' " (*Milligan*, at p. 9.) But when reasonable minds can differ as to the inferences to be drawn from the evidence, causation must be decided by the jury as an issue of fact. (*Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362, 369, citing *Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 207.)

We conclude Vance's evidence raises triable issues of material fact on causation; that is, that reasonable minds can differ about the inferences to be

20

drawn from the evidence.[7] As an initial matter, the trial court sustained Vance's objection to the police report's conclusion about Vance's fault, a ruling City does not challenge. As stated, in deciding the propriety of summary judgment, we do not consider evidence to which objections were made and sustained. (*Gonzalez v. Mathis*, *supra*, 12 Cal.5th at p. 39.)

Further, we hold the fact Vance personally cannot recall the details of the accident is not dispositive if there is other evidence, including circumstantial evidence, from which a reasonable inference of causation can be drawn; her lack of memory does not by itself justify judgment in City's favor or prohibit her from presenting evidence raising a triable issue of material fact on the point. (See e.g., *Kaney v. Custance*, *supra*, 74 Cal.App.5th at pp. 217-221 [plaintiff's inability to remember her fall did not bar her from proving causation; "[t]hough appellant cannot remember falling on [the defendant's] stairs, the circumstantial evidence would permit a trier of fact to make a reasonable and probable inference that the condition of the stairs, including the absence of a handrail, was a substantial factor in the fall"].) City's summary judgment theory below was based mainly on Vance's inability to recall the accident and the police report's inadmissible conclusion that she was at fault for failing to stop at the stop sign. We look only to whether other evidence permits a reasonable inference that the dangerous condition at the intersection was a substantial factor in causing the accident.

We conclude Vance's opposition evidence raised triable factual issues for a jury. " 'Where the complexity of [a] causation issue is beyond common

_____

[7] Only in her reply brief does Vance clearly argue City did not meet its initial burden to negate causation. Thus, we do not decide whether City's showing demonstrated Vance does not possess, and cannot reasonably obtain, evidence that the dangerous conditions at the intersection were a substantial factor in causing her harm. (See *Taylor v. Financial Casualty & Surety, Inc.*, *supra*, 67 Cal.App.5th at p. 979.)

experience, expert testimony is required to [prove] causation.' " (*Kaney v. Custance*, *supra*, 74 Cal.App.5th at p. 217.) Both Vance's experts testified that the limited or restricted sight distances at the intersection was the "significant factor[ ]" or the "primary causation factor" in her accident. Dunlap explained his reasoning, setting out in detail the relevant federal and state standards for safe intersection sight distance and incorporating photographs: "The available sight distance for an eastbound driver stopped on Via Zapata to observe approaching southbound traffic on Canyon Crest Drive was measured and photographed by [his firm] at the time of the field review on October 8, 2019. As shown in the photographs captioned below, the limiting factor in the sight distance was a vehicle legally parked along the west curb line of Canyon Crest Drive approximately 68 feet north of the north curb line prolongation of Via Zapata." Citing Glover's deposition testimony (among other evidence), Eisenbeisz stated it was "most probable from [it] and the scene photographs that there was a line of parked vehicles along the west curb at the time of the subject accident." Based on all facts as well as his accident reconstruction experience and training, he opined "the earliest that Ms. Vance could have possibly perceived [the other vehicle] as a threat was about 2.0 seconds prior to impact. Her ability to see [the other vehicle] was obstructed by the presence of the parked vehicles along the west curb, several large trees located in the parkway along the west side of Canyon Crest Drive, and the block wall for the apartment complex on the west side of Canyon Crest Drive. Although Ms. Vance would have been physically able to see a small portion of [the other vehicle] at 2.0 seconds to impact, it is unlikely that her complete attention would have been directed to the southbound lanes at that point in time because she was in the process of negotiating a left turn in order to reach her intended destination." He stated that the "cars parked

22

along the west side of Canyon Crest Drive north of Via Zapata prevented Ms. Vance from seeing [the other vehicle] before she began to accelerate into the intersection."

City argues the court "properly sustained evidentiary objections" to those declarations. We disagree with this interpretation of the court's ruling. First, the court did not mention those expert declarations in its ruling on evidentiary objections. (See fn. 4, *ante*.) City apparently refers to the portion of the court's ruling stating that Vance "offered no evidence that the Eisenbeisz and Dunlap theories represented reality." That ruling, however, does not exclude the experts' opinions. As best we understand it, the court was referring to its belief that the record was absent evidence that parked cars on Canyon Crest Drive at the time of the accident in any way "brought about the collision." We reject this strict treatment of the evidence. On a summary judgment we must view all evidence and draw inferences in the light most favorable to Vance. In any event, "[w]e are not bound by the trial court's stated reasoning or rationales." (*Rheinhart v. Nissan North America, Inc., supra*, 92 Cal.App.5th at p. 1024.)

Here, the experts based their opinions in part on other evidence—from both Glover and Officer Cuevas—that at about the time of the accident parked cars were present on the northwest corner of Canyon Crest Drive, which limited the sight distance for vehicles on Via Zapata seeking to turn left on Canyon Crest Drive as Vance was attempting to do. City asserts Glover did not know whether any of the parked cars were there at the time of the collision. But when asked how long it took her to get to the scene after she heard the collision, Glover testified, "Just as long as it took me to walk out [of] my office and walk" which was "*within* ten minutes" of the accident. (Italics added.) And according to Officer Cuevas, photographs taken after the

23

accident showed parked vehicles on Canyon Crest Drive.[8]  He confirmed that traffic had been blocked off due to the collision.  Liberally construed, the evidence from Glover and Officer Cuevas permits a reasonable, nonspeculative, inference that the parked cars at the intersection had not moved since the collision, and were present at the time of the accident.

On appeal, City relies on cases outside the public entity liability context that explain that when causation presents a matter of speculation or conjecture, or the probabilities are evenly balanced, the court must resolve the issue in the defendant's favor.  (*Leslie G. v. Perry & Associates*, *supra*, 43 Cal.App.4th 472, 484; *Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1104.)[9] City argues that because Vance cannot recall the accident, there is no evidence about whether she stopped at the stop sign or looked before turning, how she navigated the turn, or that trees, cars or vegetation blocked her line of sight.  City also seeks to distinguish *Kaney v. Custance*, *supra*, 74 Cal.App.5th 201 on grounds a motor vehicle accident is "materially different"

---

[8]     As Vance explains in reply, the sole objections City advanced as to Glover's and Officer Cuevas's deposition testimony were boilerplate and technical; that Vance did not highlight the deposition excepts on which she relied or include only the pages where they appeared.  It objected that "all opinions based on the[ ] deposition transcripts should . . . not be considered." City does not repeat these objections or advance them on appeal.

[9]     City also relies on a 2019 unpublished case involving an apparently unrelated plaintiff and the City of Santa Barbara, telling us it may be cited under California Rules of Court, rule 8.1115(b)(1) because it is relevant under the law of the case doctrine.  Under that doctrine, " 'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of *the same parties* in any subsequent retrial or appeal *in the same case.*' " (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301, italics added.) The doctrine is not applicable where different parties are involved, as here. We do not consider the unpublished Santa Barbara case.

than a trip and fall.  It points to the differing factors that may have contributed to the accident.

In *Kaney*, a premises liability case, the Court of Appeal reversed a summary judgment, holding the trial court erred by ruling a slip and fall plaintiff's inability to remember the fall meant she lacked nonspeculative evidence of causation.  (*Kaney v. Custance*, *supra*, 74 Cal.App.5th at p. 217; see also *id*. at p. 204 ["Is a plaintiff barred as a matter of law from proving causation in a slip and fall case if there were no witnesses to the fall and he or she remembers being on stairs and then waking up in pain but does not remember the fall itself?  No.  That is not the law in California"].)  In *Kaney*, the matter was one of common knowledge: whether the absence of a stairway handrails, the size of risers, or both, caused the plaintiff to fall.  (*Id*. at p. 217.)  Thus, while the plaintiff had submitted a civil engineering expert's declaration explaining that the stairs were a substantial misstep hazard at the time of the incident (*id*. at p. 209), she did not need expert testimony to raise a triable issue as to causation.  (*Ibid*.)  *Kaney* discussed trip and fall cases in which the plaintiffs could not remember their falls, observing that in those cases, "the circumstantial evidence led to reasonable and probable inferences that each fell from a height due to the absence of adequate barriers that would have restrained them."  (*Id*. at pp. 219-220.)  It concluded that the same result followed in that case; that "a trier of fact could draw a reasonable and probable inference in appellant's favor that she fell while on the stairs based on her testimony that she remembers being on the stairs and waking up on the floor in pain" and "that [she] would not have fallen if, among other things, she had a handrail to give her balance or give her something to grab onto when stumbling."  (*Id*. at p. 220.)

*Kaney* further rejected the defendant's argument that it was just as likely the plaintiff's fall was caused by something other than defects identified by plaintiff's expert, concluding it "ignores [the expert's] explanation for how handrails prevent stumbles and falls." (*Kaney v. Custance, supra*, 74 Cal.App.5th at p. 220.) Such is the case here. City's argument (that "unlike in *Kaney*, here there is no undisputed piece of circumstantial evidence like the missing handrail") ignores the expert testimony and other evidence from which a jury could reasonably infer parked vehicles were present at the northwest corner of Canyon Crest Drive at the time of the accident. In sum, these inferences create material issues for the fact finder on whether the intersection's dangerous conditions contributed to the collision. We disagree that Vance's evidence only raises a possibility of causation or that it is speculative and conjectural.

## VI. *Design Immunity*

As stated, though the parties briefed it below, the trial court did not address the question of design immunity. Because it focuses solely on causation, City does not argue on appeal it was entitled to judgment as a matter of law with respect to that affirmative defense. Vance, however, argued the issue extensively in her opening brief, giving City the opportunity to address it.

"Design immunity is often raised on a motion for summary judgment or nonsuit, thereby enabling the trial court to find the defense established as a matter of law. [Citation.] 'The first two elements, causation and discretionary approval, may only be resolved as issues of law if the facts are

26

undisputed.' " (*Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 946, quoting *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940.)[10]

"Discretionary approval ' "simply means approval in advance of construction by the legislative body or officer exercising discretionary authority." ' [Citation.] It is satisfied by showing the plan or design was *either* (1) 'approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval' *or* (2) 'prepared in conformity with standards previously so approved.' [Citations.] If the relevant facts are undisputed, the issue of discretionary approval may be resolved as a matter of law." (*Kabat v. Department of Transportation*, *supra*, 107 Cal.App.5th at pp. 661-662, quoting § 830.6, *Hampton v. County of San Diego*, *supra*, 62 Cal.4th at p. 350 & *Grenier v. City of Irwindale*, *supra*, 57 Cal.App.4th at p. 940.)

" 'Discretionary approval need not be established with testimony of the people who approved the project. Testimony about the entity's discretionary approval custom and practice can be proper even though the witness was not

10    The third element, whether there is substantial evidence of the reasonableness of the plan or design's approval, is a question of law for the court, not a jury. (§ 830.6; *Cornette*, *supra*, 26 Cal.4th at p. 72.) As to this element, the typical summary judgment standards do not apply. (*Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 21.) The trial or appellate court must decide whether "there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (§ 830.6; *Cornette*, at p. 72.) The court is "not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted." (*Grenier v. City of Irwindale*, *supra*, 57 Cal.App.4th at p. 940.) Thus, a plaintiff's expert's disagreement does not create a triable issue of material fact. (*Menges*, at p. 20.)

personally involved in the approval process.' [Citations.] 'A detailed plan, drawn up by a competent engineering firm, and approved by [the public entity's] engineer in the exercise of his or her discretionary authority, is persuasive evidence of the element of prior approval.' " (*Kabat v. Department of Transportation*, *supra*, 107 Cal.App.5th at pp. 661-662.)

For purposes of design immunity, City's traffic engineer Libring stated he had "duly authorized" what he referred to as a "traffic improvement plan (Work Order ID No. 2946)" and stated he was "duly authorized as City Traffic Engineer for the City of Riverside to make any and all improvements in the area of Canyon Crest Drive referenced in Work Order ID No. 2946." He stated, "[S]ubject to my discretion as a City Traffic Engineer employed by the City of Riverside, in adopting the 2009 City[-]approved improvement plan to Canyon Crest Drive set forth in Work Order ID No. 2946, it was my determination that all of the actions I took in implementing said Word [*sic*] Order, including the addition of parking stripes and reasonable parking restrictions and allowing the location of the stop sign controlling the intersection at Canyon Crest and Via Zapata to remain as it existed previously, were appropriate and reasonable under the circumstances." The work order, approved and signed by Libring, references an "attached plan," (all appended to an attorney declaration as Exhibit Nos. J, K and L), which appears to be a two-page color aerial view of Canyon Crest Drive and Via Zapata with notations and yellow markings indicating, among other things, where red curbs and white stripes were to be installed. None of the documents appear to contain a stamp or seal.

In opposition, Vance's expert Dunlap in his declaration averred that "the document does not meet the requirements of an approved plan under the California Business and Professions Code section 6735 . . . ." He quotes the

28

section, which requires for civil engineering plans with multiple sheets that "the [civil engineer's] signature, seal or stamp, and date of signing and sealing or stamping shall appear on each sheet of the plans." (See Bus. & Prof. Code, § 6735, subd. (a).) Dunlop states "[n]either Work Order [No.] 2946 . . . [nor] the attached aerial view of Canyon Crest Drive . . . have the required stamp or seal of a licensed civil engineer approving the document, or the date of signing and sealing as requiring for it to be recognized as a valid approved plan. There are no provisions under the code for the deviation or omittance of these requirements." He concludes that the document "is not an approved plan." Vance presented deposition testimony from senior City traffic engineer Phillip Hermalex Nitollama, who testified about City's practices with regard to service requests and traffic engineering design. He stated that for the most part, he handled the traffic engineering designs, which were created either by a City employee or other contractor using a computer aided design program, which is to scale and shows engineered markings, and then is typically reviewed, signed, and electronically stamped.

We recognize at least one court has held noncompliance with particular Business and Professions Code requirements (e.g., for a signed plan) does not necessarily defeat design immunity, as section 830.6 does not dictate any form or technical requirements to establish the necessary approval. (*Bane v. State of California* (1989) 208 Cal.App.3d 860, 869, abrogated on other grounds by *Cornette, supra*, 26 Cal.4th at p. 74, fn. 3.) But here, expert and other testimony conflicts on the discretionary approval element, with Vance's evidence tending to show Libring's approval was not of a legitimate or sufficiently detailed plan or diagram. (Compare *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1247-1248, 1263 [public entity engineer's review and approval of construction plans depicting vertical curve and

29

widening of road with "nexus . . . [to] adequacy or inadequacy of stopping sight distance" established discretionary approval element as a matter of law].)  And City does not address design immunity on appeal.

We are not permitted to resolve the competing expert and other testimony on summary judgment, but rather, resolve all evidentiary doubts or conflicts in Vance's favor.  (Code Civ. Proc., § 437c; (*Gonzalez v. Mathis, supra*, 12 Cal.5th at p. 39; *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 186-189 [trial court's gatekeeping function in evaluating expert testimony on summary judgment does not involve "choosing between competing expert opinions"].)  Doing so requires us to conclude that City was not entitled to summary judgment on the basis of design immunity.

DISPOSITION

The summary judgment is reversed.  Vance shall recover her costs on appeal.

O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.